UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NEJLA K. LANE and LANE LEGAL SERVICES, P.C., an Illinois Professional Corporation, ) ) ) ) Plaintiffs/Counter-Defendants, ) ) v. ) ) STEPHEN KENJI LE BROCQ, ) ) Defendant/Counter-Plaintiff. ) | No. 15 C 6177<br><br>Chief Judge Rubén Castillo |

## MEMORANDUM OPINION AND ORDER

Nejla K. Lane ("Lane") and her law firm Lane Legal Services, P.C. ("LLS") (collectively "Plaintiffs") bring this action against Stephen Kenji Le Brocq ("Defendant"), a former employee, alleging violations of federal privacy laws, breach of contract, fraud, and related claims. (*See* R. 48, Mem. Op. & Order.) Defendant, in turn, asserts counterclaims for breach of contract, fraud, intentional infliction of emotional distress, defamation, and unpaid wages under the Illinois Wage Payment and Collection Act ("IWPCA"), 820 ILL. COMP. STAT. 115/5 *et seq*. (R. 51, Answer & Countercl.) Plaintiffs move to dismiss Defendant's counterclaims under Federal Rule of Civil Procedure 12(b)(6). (R. 65, Mot.) For the reasons stated below, the motion is granted in part and denied in part.

## BACKGROUND

The facts underlying the parties' dispute were fully set forth in a prior opinion and are repeated here only as is necessary to resolve the present motion. *See Lane v. Le Brocq*, 15 C 6177, 2016 WL 1271051 (N.D. Ill. Mar. 28, 2016). Lane and Defendant are both attorneys licensed to practice law in Illinois. *Id.* at *1. In May 2013, when Defendant was still a law

student, he began working for Plaintiffs. *Id.* In May 2014, Defendant became a licensed attorney and continued working for Plaintiffs in that capacity. *Id.* On February 18, 2015, the parties entered into an employment agreement, which contained terms governing Defendant's salary, vacation time, entitlement to fees, use of the firm's financial accounts, and other matters. (R. 51-1, Agreement.) The agreement further provided that "[e]ither party may terminate this agreement at any time with reasonable cause." (*Id.* ¶ 8.) In May 2015, Defendant left the firm to start his own law firm. *Lane*, 2016 WL 1271051, at *2. Plaintiffs then filed this action, alleging that when Defendant left the firm he stole information and clients and breached various aspects of the parties' written employment agreement. *Id.* at *4. The Court granted in part and denied in part Defendant's motion to dismiss the complaint under Rule 12(b)(6). *Id.* at *5-15.

Thereafter, Defendant answered the complaint and asserted six separate counterclaims, claiming that it was *Plaintiffs* who acted wrongfully and breached the parties' employment agreement. (R. 51, Answer & Countercl. ¶¶ 7-58.) In Count I, he alleges that Plaintiffs breached the parties' agreement by failing to pay him wages and vacation pay in the amount of $12,750. (*Id.* ¶¶ 7-11.) In Count II, he alleges that Plaintiffs' failure to pay him his unpaid wages constituted a violation of the IWPCA. (*Id.* ¶¶ 12-27.) In Count III, he alleges that Plaintiffs breached the parties' agreement by failing to pay him his portion of fees generated in cases he worked on while employed at LLS. (*Id.* ¶¶ 28-36.) In Count IV, he alleges that Plaintiffs engaged in fraud when Lane told him he was free to leave the firm at any time and that she would be "happy" for him to open his own law practice—statements he claims were patently false. (*Id.* ¶¶ 37-44.) In Count V, Defendant alleges intentional infliction of emotional distress against Lane, claiming that she "has done everything possible to attempt to sabotage and otherwise destroy Defendant's life" since he left the firm, including telling law enforcement agencies, state

bar regulators, and others that he is "untrustworthy, a thief, [and] not fit to practice law." (*Id.* ¶¶ 45, 48.) In Count VI, Defendant alleges that Lane defamed him during her "crusade of vilification" after he left the firm, making negative statements about him to "a host of individuals and entities." (*Id.* ¶ 53.) He seeks an award of actual damages, attorneys' fees, and other relief. (*Id.*) Lane moves to dismiss all of Defendant's counterclaims under Rule 12(b)(6). (R. 65, Mot.; R. 66, Mem.) The motion is now fully briefed. (R. 71, Resp.; R. 73, Reply.)

## LEGAL STANDARD

A Rule 12(b)(6) motion "challenges the viability of a complaint by arguing that it fails to state a claim upon which relief may be granted." *Firestone Fin. Corp. v. Meyer*, 796 F.3d 822, 825 (7th Cir. 2015) (citation omitted). In deciding a Rule 12(b)(6) motion, the Court views the complaint in the light most favorable to the plaintiff, accepts all well-pleaded factual allegations as true, and draws all reasonable inference in the plaintiff's favor. *Vesely v. Armslist LLC*, 762 F.3d 661, 664-65 (7th Cir. 2014). The Court can consider the "allegations set forth in the complaint itself, documents that are attached to the complaint, documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice." *Willamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013). To survive dismissal, a complaint "must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 663, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Because federal courts employ notice pleading, rather than fact pleading, a plaintiff is not required to include "detailed factual allegations" to survive dismissal. *Alexander v. United States*, 721 F.3d 418, 422 (7th Cir. 2013). Instead, "the plausibility requirement demands only

that a plaintiff provide sufficient detail to present a story that holds together." *Id.* (citation and internal quotation marks omitted). Claims of fraud are an exception to this rule, as they must be pled "with particularity." FED. R. CIV. P. 9(b). This means that the party alleging fraud must describe the "who, what, when, where, and how" of the fraud. *Wigod v. Wells Fargo Bank, N.A*, 673 F.3d 547, 569 (7th Cir. 2012) (citation omitted).

## ANALYSIS

### I. Breach of Contract (Counts I and III)

In Count I, Defendant alleges that Plaintiffs' breached the parties' February 2015 agreement by failing to pay him wages and vacation pay he is owed. (R. 51, Answer & Countercl. ¶¶ 7-11.) Under Illinois law, a party asserting breach of contract must plead four elements: (1) the existence of a valid and enforceable contract; (2) performance of the contract by the claimant; (3) a breach by the other party; and (4) injury to the claimant. *Hess v. Bresney*, 784 F.3d 1154, 1158 (7th Cir. 2015) (citing *Henderson-Smith & Assocs. v. Nahamani Family Serv. Ctr.*, 752 N.E.2d 33, 43 (Ill. App. Ct. 2001)). Contracts "must be construed as a whole, viewing each provision in light of the other provisions." *United States v. Rogers Cartage Co.*, 794 F.3d 854, 861 (7th Cir. 2015) (quoting *Thompson v. Gordon*, 948 N.E.2d 39, 47 (Ill. 2011)). The Court's "primary objective in construing a contract is to give effect to the intent of the parties." *Gallagher v. Lenart*, 874 N.E.2d 43, 58 (Ill. 2007). "Unambiguous contract terms must be given their plain and ordinary meaning." *QuickClick Loans, LLC v. Russell*, 943 N.E.2d 166, 172 (Ill. App. Ct. 2011). A contract is considered ambiguous if it is unclear or susceptible to more than one meaning. *Gallagher*, 874 N.E.2d at 58. "[W]hether a contract is ambiguous is a question of law." *Cent. Ill. Light Co. v. Home Ins. Co.*, 821 N.E.2d 206, 214 (Ill. 2004). If a contract term is ambiguous, the Court can consider extrinsic evidence to determine the parties'

intent, but this becomes a question of fact that cannot be decided on a motion to dismiss. *Bank of Am., N.A. v. Oberman, Tivoli & Pickert, Inc.*, 12 F. Supp. 3d 1092, 1100 (N.D. Ill 2014) (citing *Quake Constr., Inc. v. Am. Airlines, Inc.*, 565 N.E.2d 990, 994 (Ill. 1990)).

Defendant alleges that a valid contract exists between the parties, and he includes the agreement as an exhibit. (R. 51, Answer & Countercl. ¶ 8; R. 51-1, Agreement.) He further alleges that he performed his obligations under the agreement, and that Plaintiffs breached the agreement by failing to pay him certain wages and vacation pay. (R. 51, Answer & Countercl. ¶¶ 10, 25.) He claims that he has been damaged in the amount of $12,750, which by his calculation is the amount he is owed under the agreement. (R. 51, Answer & Countercl. ¶ 10.) Taking these allegations as true, Defendant has adequately alleged a breach of contract claim. *See Hess*, 784 F.3d at 1158-59.

Plaintiffs argue, however, that Defendant's claim fails because he is not entitled to the number of vacation days that he claims. (R. 66, Mem. at 2; R. 73, Reply at 1-2.) They argue that under Illinois law, employees earn vacation pay pro rata as they render services to their employer, and by their count, Defendant is entitled to at most seven days of vacation. (R. 66, Mem. at 2.) Plaintiffs cite to *Arrez v. Kelly Servs., Inc.*, 522 F. Supp. 2d 997, 1002 (N.D. Ill. 2007), but that case does not support Plaintiffs' position. (*See* R. 73, Reply at 2.) The contract in *Arrez* was a "length-of-service" plan, meaning that the employee's vacation time was guaranteed only if he rendered services for a certain period. *Arrez*, 522 F. Supp. 2d at 1002; *see also Golden Bear Family Rests., Inc. v. Murray*, 494 N.E.2d 581, 582 (Ill. App. Ct. 1986) (employees earned vacation pay pro rata where defendant's vacation policy provided that accrued vacation pay would not be paid to employees terminated within the calendar year).

In this case, by contrast, the parties' agreement states in plain language that Defendant is "entitled to take twenty-eight (28) days for personal paid vacation time during the fiscal year." (R. 51-1, Agreement ¶ 4.) This provision does not contain any qualification as to how the days accrue or may be used, nor does it contain a length-of-service provision like the policy at issue in *Arrez*. (*Id.*) At best the language is ambiguous, and determining what the parties intended when they drafted this provision is an issue of fact that cannot be resolved on a motion to dismiss. *Bank of Am.*, 12 F. Supp. 3d at 1100. Accordingly, the Court declines to dismiss on this ground.

Plaintiffs also argue that Defendant's allegations in Count I are inconsistent because he lists two different totals of the number of days he is owed. (R. 66, Mem. at 2.) It is true that in paragraph ten Defendant states that he is owed for 36 days, whereas in paragraph 19 he alleges that he is owed for 34 days. (R. 51, Answer & Countercl. ¶¶ 10, 19.) Defendant clarifies in his response brief that he meant to claim payment for 34 days; presumably the other number was a scrivener's error. (*See* R. 71, Resp. at 3.) In any event, this type of minor discrepancy is immaterial. At the pleading stage, Defendant only needs to allege a plausible breach of contract claim, and exact calculations of the damages he is owed under the contract are not required. *See Traffic Tech, Inc. v Kreiter*, No. 14-cv-7528, 2016 WL 4011229, at *3 (N.D. Ill. July 27, 2016) (rejecting defendant's attack on plaintiff's "arithmetic" used to calculate how much he was owed under the parties' agreement, because "[w]hose calculation is correct is a disputed issue of fact that cannot be resolved at the motion to dismiss stage"); *Martin v. Asset Acceptance, LLC*, No. 11 CV 6256, 2012 WL 3042524, at *2 (N.D. Ill. July 25, 2012) (observing that when courts decide a Rule 12(b)(6) motion, "the issue is not whether [plaintiff] could prove her damages, but whether she stated a proper claim for relief"). Defendant has plausibly alleged that he is owed

money under the parties' agreement for work and vacation, and therefore, the motion is denied as to Count I.

Plaintiffs relatedly argue that Defendant fails to state a claim in Count III, which seeks unpaid fees under this same agreement. (R. 66, Mem. at 5-6.) In Plaintiffs' view, Defendant is not entitled to any fees that were received after he left the firm. (*Id.*) Defendant disagrees with this interpretation. (R. 71, Resp. at 7.) The parties' agreement provides in pertinent part:

> Any Personal Injury settlements/judgments/verdicts shall be allocated in gross within Lane Legal Services, P.C. as follows: 50% to Lane Legal Services, P.C. and 1/3 to NEJLA K. LANE and STEPHEN LE BROCQ, respectively, remainder shall be given to other attorneys that have worked on the case wherein the proceeds have derived.

(R. 51-1, Agreement ¶ 2.) The Court must interpret this provision in accordance with its plain language. *QuickClick*, 943 N.E2d at 1721. As drafted, this provision contains no time limitation on the fees that are received by the firm nor does it specify that Defendant would not receive any share of the fees if he left the firm. Defendant alleges that he is entitled to fees for any case he worked on while at the firm that resulted in a settlement, judgment, or jury verdict regardless of when the money was actually received, and the provision is certainly susceptible to this interpretation. (R. 51, Answer & Countercl. ¶ 30.) Lane argues that the term "within" necessarily implies that Defendant would have to be working at the firm to receive a share of the fees, but this language is at best ambiguous. The Court cannot determine the intent behind this provision on a motion to dismiss. *Bank of Am.*, 12 F. Supp. 3d at 1100.

Plaintiffs rely on *Hess v. Bresney* to argue that their proposed interpretation of the fee provision is the more reasonable one. (R. 66, Mem. at 5.) However, *Hess* was decided on a motion for summary judgment—at which point the Court can consider outside evidence—whereas this case is only at the pleading stage. 784 F.3d at 1159. It is also notable that the fee

7

provision in *Hess* referred to the employee's right to receive fees that were "generated" during his employment, which the Seventh Circuit interpreted to mean that he could not obtain fees received after he left the firm. *Id.* at 1160-61. There is no such limiting language contained in the parties' agreement here. (*See* R. 51-1, Agreement.) Instead, the agreement refers broadly to "any" settlements, jury verdicts, or judgments received by the firm. (*Id.* ¶ 2.) Thus, Plaintiffs' reliance on *Hess* is unavailing.

Plaintiffs also argue that Defendant has miscalculated the amount that he is owed under the agreement. (R. 66, Mem. at 6.) But as stated above, an exact calculation of damages will be made at a later stage. *Traffic Tech, Inc.*, 2016 WL 4011229, at *3. For these reasons, Plaintiffs' motion to dismiss is denied as to Count III.

## II. IWPCA (Count II)

In Count II, Defendant alleges that Plaintiffs' failure to pay him wages and vacation violated the IWPCA. (R. 51, Answer & Countercl. ¶¶ 12-27.) Plaintiffs first argue that Defendant is not covered by the IWPCA because he is not an "employee" as defined by the statute. (*Id.* at 3.) The IWPCA provides in pertinent part: "Every employer shall pay the final compensation of separated employees in full, at the time of separation, if possible, but in no case later than the next regularly scheduled payday for such employee." 820 ILL. COMP. STAT. 115/5. The statute defines "employee" broadly to include "any individual permitted to work by an employer in an occupation," other than an individual:

> (1) who has been and will continue to be free from control and direction over the performance of his work, both under his contract of service with his employer and in fact; and
>
> (2) who performs work which is either outside the usual course of business or is performed outside all of the places of business of the employer unless the employer is in the business of contracting with third parties for the placement of employees; and

8

   (3) who is in an independently established trade, occupation, profession or business.

820 ILL. COMP. STAT. 115/2. This three-part test is conjunctive, "meaning that if an employer cannot satisfy each of the prongs, then the individual must be classified as an employee for purposes of IWPCA." *Costello v. BeavEx, Inc.*, 810 F.3d 1045, 1050 (7th Cir. 2016). This provision was "designed to distinguish between protected employees and independent contractors who are not protected." *Marcus & Millichap Inv. Servs. of Chi., Inc. v. Sekulovski*, 639 F.3d 301, 310 (7th Cir. 2011) (citation omitted); *see also* ILL. ADMIN. CODE tit. 56, § 300.460(a) ("Independent Contractor Exemption").

  Plaintiffs argue that Defendant was not an employee of LLS because he had involvement in the management of the firm, including having hiring and firing authority, had no restrictions concerning how he conducted his work as an attorney, and was designated as a "junior partner." (R. 66, Mem. at 3.) But the bare fact that Defendant had some control over his own work or involvement in the management of the firm does not preclude him from recovering under the IWPCA. *See Margulis v. Med. Parts Int'l. Inc.*, 98 C 0714, 1999 WL 183648, at *10 (N.D. Ill. Mar. 25, 1999) (holding that president of company was an employee for purposes of IWPCA where he "merely assisted others in operating the company" and "still had to answer to the Board of Directors"); *Anderson v. First Am. Grp. of Cos., Inc.*, 818 N.E.2d 743, 749 (Ill. App. Ct. 2004) (holding that company executive was an employee under the IWPCA because he "did not operate outside of the control and direction of more senior executives").

  There is little support for Plaintiffs' position that Defendant was so free from control under the parties' arrangement that he could be deemed an independent contractor. Instead, the wording of the agreement supports Defendant's position that while he was involved in some

9

decision-making at the firm and exercised his own professional judgment when carrying out his duties as a lawyer, he was essentially an associate attorney employed by LLS. *See Shramuk v. Snyder*, 663 N.E.2d 468, 472 (Ill. App. Ct. 1996) ("[A]n associate attorney working for wages is an 'employee' within the meaning of the [IWPCA]."). Courts have made a distinction where the plaintiff is an *owner* of the business, *Anderson*, 818 N.E.2d at 749, but there is nothing in the parties' agreement to suggest that Defendant was given any ownership rights over LLS.

Additionally, even if Plaintiffs are correct that Defendant satisfies the first prong, they must also show that Defendant satisfies the other two prongs before he will be excluded from coverage under the IWPCA. *See Castello*, 810 F.3d at 1050. Plaintiffs do not argue, nor is there anything in the counter-complaint to suggest, that Defendant performed work outside of LLS's usual course of business or that he was "independently established" in a trade or profession for purposes of the IWPCA. *See* 820 ILL. COMP. STAT. 115/2; *see also* ILL. ADMIN. CODE tit. 56, § 300.460(a)(2) ("'An independently established trade, occupation, profession or business' means the individual performing the services has a proprietary interest in such business, to the extent that he/she operates the business without hindrance from any other person and, as the enterprise's owner, may sell or otherwise transfer the business."). Plaintiffs have thus failed to carry their burden.[1] *See Costello*, 810 F.3d at 1060 ("Under the IWPCA, if the employer cannot

---

[1] Plaintiffs rely on *Doherty v. Kahn*, 682 N.E.2d 163 (Ill. App. Ct. 1997), which found that an executive's control over a business excluded him from coverage under the IWPCA. (R. 66, Mem. at 3.) But as the U.S. Court of Appeals for the Seventh Circuit later recognized, the *Doherty* court ruled in favor of the employer after considering only the first prong and "did not find it necessary to address the second or third prongs of the exclusion." *Adams v. Catrambone*, 359 F.3d 858, 864 (7th Cir. 2004). Subsequent case law has made clear that all three prongs must be satisfied for the independent contractor exemption to apply. *Id.*; *see also Costello*, 810 F.3d at 1050. Plaintiffs also rely on *Amoroso v. Crescent Private Capital, L.P*, 02 C 1453, 2003 WL 22344098 (N.D. Ill. Oct. 14, 2003), and *Bargenquast v. Nakano Foods, Inc.* 243 F. Supp. 2d 772 (N.D. Ill. 2002), which cite to *Doherty*, but both of these cases were decided before the Seventh Circuit's opinion in *Adams*.

satisfy *just one prong* of the test, the inquiry into employment status ends." (emphasis in original)). The Court declines to dismiss on this ground.

Plaintiffs next argue that even if Defendant was an employee for purposes of the IWPCA, he did not earn all of the vacation time that he is claiming. (R. 66, Mem. at 4.) This is essentially a rehash of Plaintiffs' argument made in connection with Count I—that Defendant earned vacation as he rendered services, such that he is not entitled to the entire 28 days of vacation. (*See id.* at 2.) As stated earlier, the parties' agreement is not drafted as a "length-of-service" plan and contains no limitations about how Defendant's vacation time was to accrue or be used.[2] (R. 51-1, Agreement.) What the parties intended in connection with this provision must be sorted out at a later stage of the litigation. *Bank of Am.*, 12 F. Supp. 3d at 1100. The Court declines to dismiss on this ground.

Finally, Plaintiffs argue that Defendant is not entitled to attorneys' fees under the IWPCA because, by their calculations, he is seeking in excess of what he is owed under the statute. (R. 66, Mem. at 4.) The IWPCA provides in pertinent part:

> Whenever a[n] . . . employee brings an action for wages earned and due owing according to the terms of the employment, and establishes by the decision of the court or jury that the amount for which he or she has brought the action is justly due and own, and that a demand was made in writing. . . for a sum not exceeding the amount so found due. . . then the court shall allow to the [claimant] a reasonable attorney fee.

705 ILL. COMP. STAT. 225/1. Defendant alleges here that he is due $12,750 under the parties' employment agreement, that he made a written demand to Plaintiffs for this amount, and that they nevertheless refused to pay him. (R. 51, Answer & Countercl. ¶¶ 23-27.) He attaches the demand letter to his counter-complaint. (R. 51-1, Demand Letter.) Plaintiff takes issue with

---

[2] The IWPCA defines wages as "any compensation owed an employee by an employer pursuant to an employment contract or agreement." 820 ILL. COMP. STAT. 115/2. Thus, the parties' agreement remains the operative document in determining what wages Defendant is due under the IWPCA.

11

Defendant's calculations and argues that he is owed less than $12,750. (R. 66, Mem. at 4-5.) But Defendant has alleged that he is owed $12,750, and the Court must accept his allegations as true at this stage. *Vesely*, 762 F.3d at 664. If it turns out that Defendant is owed less than that, Plaintiffs are correct that he cannot recover attorneys' fees. 705 ILL. COMP. STAT. 225/1. But if Defendant is owed the amount that he claims, the IWPCA gives him the right to collect attorneys' fees expended in trying to collect those funds. *Id.* Whose calculation is correct must be sorted out at a later stage of the litigation. *Traffic Tech, Inc.*, 2016 WL 4011229, at *3. Therefore, the motion to dismiss is denied as to Count II.

### III. Common Law Fraud (Count IV)

In Count IV, Defendant alleges that Plaintiffs committed fraud because Lane, acting as LLS's "agent," told him he was free to leave the firm at any time "without further obligations" and that she would be "happy for him to open his own law practice." (R. 51, Answer & Countercl. ¶¶ 38-39.) Under Illinois law, the elements of fraudulent misrepresentation are: (1) a false statement of material fact; (2) knowledge or belief by the speaker that the statement is false; (3) intent to induce the claimant to act; (4) action by the claimant in reliance on the statement; and (5) damages. *Wigod*, 673 F.3d at 569 (7th Cir. 2012) (quoting *Dloogatch v. Brincat*, 920 N.E.2d 1161, 1166 (Ill. App. Ct. 2009). The Federal Rules of Civil Procedure impose a heightened pleading standard for fraud claims, requiring that a claimant "state with particularity the circumstance constituting fraud." FED. R. CIV. P. 9(b). Nevertheless, "[f]raudulent intent may be alleged generally." *Id.*

Plaintiffs argue that Defendant's fraud claim fails because "statements concerning future intent or conduct are not actionable as fraud." (R. 66, Mem. at 6 (citation omitted).) They are partially correct. Under Illinois law, when a claim of fraud rests on a "false statement of intent

regarding future conduct, as opposed to a false statement of existing or past fact," this constitutes "promissory fraud." *Wigod*, 673 F.3d at 570 (citation and internal quotation marks omitted). "Promissory fraud is generally not actionable in Illinois unless the plaintiff also proves that the act was a part of a scheme to defraud." *Id.* (citation and internal quotation marks omitted). However, "this 'scheme exception' is broad—so broad it tends to engulf and devour the rule." *Id.* (citation and internal quotation marks omitted); *see also J.H. Desnick v. Am. Broad. Cos.*, 44 F.3d 1345, 1354 (7th Cir. 1995) (observing that "[t]he distinction between a mere promissory fraud and a scheme of promissory fraud is elusive, and has caused, to say the least, considerable uncertainty, as even the Illinois cases acknowledge"). Thus, promissory fraud will be actionable "only if it either is particularly egregious or, what may amount to the same thing, it is embedded in a larger pattern of deceptions or enticements that reasonably induces reliance and against which the law ought to provide a remedy." *Desnick*, 44 F.3d at 1354. As few as "two broken promises" can amount to a scheme to defraud. *Wigod*, 673 F.3d at 570.

Accepting Defendant's allegations as true and affording him all reasonable inferences, he has met that standard. The counter-complaint can be read to allege at least two broken promises: Lane allegedly told Defendant on one occasion that she "wanted Defendant to be successful on his own and not trapped as a bird in a 'golden cage,'" and on another occasion that "she wanted Defendant to leave" and would be "happy for him to open his law practice." (R. 51, Answer & Countercl. ¶¶ 38-40.) In essence, he claims that over time Lane lulled him into working at the firm with the understanding that he had her blessing to leave at any time to further his own career goals, even though this was never her intent; he claims that he relied on her statements to take the significant step of quitting his job at the firm and opening his own law firm. (*Id.* ¶ 43.) He further claims that, contrary to her statements, Lane was furious that he left the firm and

embarked on a campaign of harassment intended to impair his new business and damage his reputation as an attorney. (*Id.* ¶¶ 44, 47-49.) While it presents a close question, affording Defendant the inferences to which he is entitled at this stage, the Court finds these allegations sufficient to state a claim of promissory fraud. *See Advanced Ambulatory Surgical Ctr., Inc. v. Cigna Healthcare of Ill.*, No. 13 C 7227, 2014 WL 4914299, at *4 (N.D. Ill. Sept. 30, 2014) (permitting promissory fraud claim to proceed where plaintiff alleged that defendant made multiple misrepresentations about reimbursing plaintiff for its services); *Andrews v. Gerace*, No. 13 CV 1521, 2014 WL 4627383, at *9 (N.D. Ill. Sept. 15, 2014) (finding that plaintiff adequately alleged promissory fraud where she claimed that she bought 50 percent share in businesses based on defendant's false promise to split profits equally with her); *Stamatakis Indus., Inc. v. King*, 520 N.E.2d 770, 773 (Ill. App. Ct. 1987) (plaintiff adequately alleged promissory fraud where defendant made false statements during parties' extended negotiations promising to comply with a contract for the purchase of equipment and enter into a five-year employment agreement with a covenant not to compete knowing that he had no intention of doing so).

Plaintiffs also argue that damages have not been adequately pled because Defendant's "bare, conclusory allegations lack the factual content necessary to support a reasonable inference that Defendant's departure was the reason why Plaintiffs sued him." (R. 66, Mem. at 7.) The Court finds this argument confusing.[3] Defendant clearly alleged in the counter-complaint that he suffered damages as a result of Plaintiffs' actions, including expending attorneys' fees to defend this lawsuit, (R. 51, Answer & Countercl. ¶ 44), and the Court must accept his allegations as true

---

[3] Plaintiffs' argument appears to shift somewhat in the reply to focus on the "reliance" prong. (*See* R. 73, Reply at 6.) There, Plaintiffs argue that the fraud claim should be dismissed because "at no point in his entire response does Defendant even use the words 'rely,' 'reliance,' or 'relied.'" (*Id.*) But the Federal Rules do not require Defendant to make any particular allegations in his response brief. The key document is his counter-complaint, and he clearly alleges in that document that he "justifiably relied on Plaintiffs' false representation when he decided to terminate his employment." (R. 51, Answer & Countercl. ¶ 43.)

at this stage. Plaintiffs' argument appears more accurately directed at Lane's *motivation* for bringing suit, but Defendant cannot be expected to have proof of Lane's subjective motivations at this stage. Indeed, the Federal Rules permit him to plead mental state generally, even in cases of fraud. FED. R. CIV. P. 9(b); *Wigod*, 673 F.3d at 569. Giving Defendant the inferences that he is due, he has plausibly alleged that Plaintiffs took these negative actions against him to retaliate against him for leaving the firm. Whether this is actually what happened remains to be seen, but Defendant has alleged enough to proceed past the pleading stage. The motion to dismiss is denied as to Count IV.

## IV. Intentional Infliction of Emotional Distress (Count V)

In Count V, Defendant sues Lane for intentional infliction of emotional distress ("IIED"), arguing that she has "done everything possible to . . . destroy Defendant's life" since he left the firm. (R. 51, Answer & Countercl. ¶ 46.) To allege an IIED claim under Illinois law, the claimant must show: "(1) that the conduct was extreme and outrageous, (2) that the actor intended that his conduct inflict severe emotional distress or knew that there was a high probability that his conduct would inflict such distress, and, (3) that the conduct in fact caused severe emotional distress." *Bailey v. City of Chi.*, 779 F.3d 689, 696 (7th Cir. 2015). Whether conduct is extreme and outrageous is judged on an objective standard based on the facts and circumstances of a particular case. *Graham v. Commonwealth Edison Co.*, 742 N.E.2d 858, 866 (Ill. App. Ct. 2000). The standard is high, and the claimant must allege "more than mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Boston v. U.S. Steel Corp.*, 816 F.3d 455, 467 (7th Cir. 2016) (citation and internal quotation marks omitted). Instead, "a defendant's conduct must be so extreme as to go beyond all possible bounds of decency" and must be "regarded as intolerable in a civilized community." *Feltmeier v. Feltmeier*, 798 N.E.2d 75, 83

(Ill. 2003). Put another way, "the defendant's conduct must be such that the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim: Outrageous!" *Honaker v. Smith*, 256 F.3d 477, 490 (7th Cir. 2001) (citation, alteration, and internal quotation marks omitted).

Illinois courts are particularly hesitant to recognize IIED claims in employment situations out of concern that "if everyday job stresses resulting from discipline, personality conflicts, job transfers or even terminations could give rise to a cause of action for [IIED], nearly every employee would have a cause of action." *Graham*, 742 N.E.2d at 867. Accordingly, courts "have limited recovery to cases in which the employer's conduct has been truly egregious." *Van Stan v. Fancy Colours & Co.*, 125 F.3d 563, 568 (7th Cir. 1997). This high standard is met where, for example, an employer "threatened to exercise their power to coerce plaintiffs into doing something they would not otherwise do," like committing an illegal act. *Graham*, 742 N.E.2d at 867-68; *see also Welsh v. Commonwealth Edison Co.*, 713 N.E.2d 679, 684 (Ill. App. Ct. 1999) ("[I]n the absence of conduct calculated to coerce an employee to do something illegal, courts have generally declined to find an employer's retaliatory conduct sufficiently extreme and outrageous as to give rise to an action for [IIED].").

On the severe emotional distress element, the plaintiff must also meet a high standard. *Sornberger v. City of Knoxville, Ill.*, 434 F.3d 1006, 1030 (7th Cir. 2006). "Although fright, horror, grief, shame, humiliation, worry, etc. may fall within the ambit of the term 'emotional distress,' these mental conditions alone are not actionable." *Id.* (citation omitted). Rather, the distress must be so severe that it is "unendurable by a reasonable person." *Id.* "It is the degree of emotional distress actually suffered by a plaintiff which separates the actionable from the non-actionable." *Welsh*, 713 N.E.2d at 684.

16

Lane argues that Defendant has not alleged the type of extreme and outrageous conduct that would give rise to an IIED claim. (R. 66, Mem. at 8-9.) The Court agrees. Lane's alleged conduct—retaliating against Defendant for leaving her firm by filing a frivolous lawsuit against him and making false statements about him to regulatory bodies and others—is certainly inappropriate and no doubt bothersome, but it is not the type of conduct that can be said to go "beyond all possible bounds of decency." *Feltmeier*, 798 N.E.2d at 83; *see also Harriston v. Chi. Tribune Co.*, 992 F.2d 697, 703 (7th Cir. 1993) (holding that black employee's allegations that her former employer discriminated against her, damaged her vehicle, reprimanded her for no reason, eavesdropped on her phone conversations through a listening device, and falsely accused her of wrongdoing did not reach the level of extreme and outrageous conduct needed to establish claim under Illinois law for IIED); *Hegy v. Comty. Ctr. of Fox Valley*, 158 F. Supp. 2d 892, 898 (N.D. Ill. 2001) (dismissing IIED claim of 78-year-old female plaintiff in ill health who alleged that employer tried to force her to retire from company where she had worked for 32 years by locking her out of her office and posting a sign on the door that stated, "Locked by Order of the Board of Directors"; such behavior was "inappropriate" but did not constitute the type of extreme and outrageous conduct that would give rise to an IIED claim); *Welsh*, 713 N.E.2d at 684 (dismissing IIED claim where plaintiffs alleged that they were demoted, forced to perform "humiliating" tasks, harassed, and intimidated in retaliation for having voiced safety concerns to regulatory agency). Defendant's claim fails on this prong.

As Lane argues, Defendant also fails to plausible allege that he suffered the type of "severe" emotional distress that could be considered "unendurable by a reasonable person." *Sornberger*, 434 F.3d at 1030. At most he alleges that Lane's actions impaired the growth of his law firm and required him to "stop business operations, hire attorneys, and travel to different

jurisdictions." (R. 51, Answer & Countercl. ¶ 50). This is not the type of severe emotional distress that would support an IIED claim. *See Sornberger*, 434 F.3d at 1030; *see also Duffy v. Orlan Brook Condo. Owners' Ass'n*, 981 N.E.2d 1069, 1081-82 (Ill. App. Ct. 2012) (holding that plaintiff failed to satisfy this prong where she alleged in general terms that she suffered "monetary losses, medical expenses, emotional distress, and pain and suffering"). Therefore, Defendant's claim fails as a matter of law, and Count V is dismissed with prejudice.

## V. Defamation (Count VI)

In Count VI, Defendant alleges that Lane defamed him by making false statements about him to "a host of individuals and entities." (R. 51, Answer & Countercl. ¶ 53.) Plaintiffs move to dismiss this claim. (R. 66, Mem. at 10-11.) In response, Defendant states that he needs further information to support this claim and wishes to voluntarily dismiss it at this stage. (R. 71, Resp. at 12.) His request is granted, and Count VI is dismissed without prejudice.

As a final matter, Plaintiffs ask this Court to bar Defendant from using formal discovery methods to investigate this claim, but the Court finds Plaintiffs' concern premature. (*See* R. 73, Reply at 8.) While it is true that Defendant can only use formal discovery to seek information that is "relevant" to a claim or defense and "proportional to the needs of the case," *see* FED. R. CIV. P. 26(b)(1), it is unclear at this point what actions, if any, Defendant intends to take to investigate his defamation claim. The Court does not perceive Defendant's statement as a request for discovery; he merely indicates his desire to voluntarily dismiss the claim at this stage. The Court reminds Defendant that if he wishes to reassert this claim at a later stage, he must seek leave to do so and satisfy the requirements of Federal Rule of Civil Procedure 15.

## CONCLUSION

For the foregoing reasons, the motion to dismiss (R. 65) is GRANTED in part and DENIED in part. Count V is DISMISSED WITH PREJUDICE. Count VI is DISMISSED WITHOUT PREJUDICE. The parties shall appear for a status hearing on November 2, 2016, at 9:45 a.m., and are directed to reevaluate their settlement positions in light of this opinion and exhaust all efforts to settle this case.

ENTERED: _____
Chief Judge Rubén Castillo
United States District Court

Dated: October 12, 2016